**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ROBERT ADAMS, III,

                              Plaintiff,

       - v -                                     Civ. No. 9:15-CV-0913
                                                                (BKS/DJS)

NANCY SMITH, _Nurse Administrator_, and VIJAY
KUMAR MANDALAYWALA,

                              Defendants.
_____

**APPEARANCES:**                                  **OF COUNSEL:**

ROBERT ADAMS, III
Plaintiff, _Pro Se_
07-B-1611
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004

HON. ERIC T. SCHNEIDERMAN           KEITH J. STARLIN, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

     _Pro se_ Plaintiff Robert Adams, III, commenced this action, pursuant to 42 U.S.C. § 1983, alleging that the Defendants failed to provide him with adequate medical care in violation of the Eighth Amendment when he was confined at Upstate Correctional Facility ("Upstate") in the custody of the Department of Corrections and Community Supervision ("DOCCS") in 2013. Dkt. Nos. 1, Compl., & 73, 2d Am. Compl. Presently before the Court is Defendants' Motion for

Summary Judgment. Dkt. No. 115, Defs.' Mot. Summ. J. Plaintiff has opposed the Motion, Dkt. No. 124, Pl.'s Resp., and Defendants have filed a Reply, Dkt. No. 127, Defs.' Reply. For the reasons that follow, the Court recommends that Defendants' Motion be **granted** and this action **dismissed**.

## I. BACKGROUND

This action concerns the medical treatment Plaintiff received for a back injury during the period he was incarcerated at Upstate from February 1, 2013 through April 25, 2013. 2d Am. Compl. at ¶ 69. Specifically, Plaintiff asserts that the Defendants refused to provide him with his prescription for Baclofen, a muscle relaxant, when he arrived at Upstate. *Id.* at ¶¶ 139-42.

On January 3, 2013, while incarcerated at Sing Sing Correctional Facility, Plaintiff alleges that he was assaulted by a DOCCS employee, and that during that assault, he suffered a back injury. *Id.* at ¶ 13. Plaintiff was seen by medical personnel twice that same day and was noted to have no swelling or bruising, good range of motion, and ability to ambulate "swiftly and steadily." Dkt. No. 116-1, Decl. of Paula Rock, dated June 7, 2017, Ex. A, Pl.'s Ambulatory Health Record ("AHR") at pp. 34-35.[1] Plaintiff was provided with Motrin and a topical analgesic (Bengay). *Id.* An x-ray of Plaintiff's spine was conducted on January 10, 2013, which showed "straightening of lordosis due to muscle spasm," but the height of the vertebral bodies and disc spaces was preserved and no listhesis (slippage or displacement of the vertebra) was seen. *Id.* at p. 70; Dkt. No. 115-12, Decl. of Nancy Smith, dated June 8, 2017, at ¶ 31. The x-ray report indicated that Plaintiff was experiencing a muscle spasm. Pl.'s AHR at p. 70. On January 25, 2013, Plaintiff signed a form to undergo an evaluation for physical therapy. *Id.* at p. 36. On January 31, 2013, Plaintiff was

---

[1] Plaintiff's medical records were filed separately with the Court. Dkt. No. 116.

transferred from Sing Sing to Downstate Correctional Facility, and on February 1, 2013, Plaintiff was transferred from Downstate to Upstate. Dkt. No. 115-1, Defs.' Rule 7.1 Statement of Material Facts ("Defs.' SMF") at ¶¶ 12-13.[2]

Central to Plaintiff's Eighth Amendment claim, is his allegation that prior to being transferred from Sing Sing, on January 25, 2013, he was prescribed the muscle relaxant Baclofen, 10 mg. 2d Am. Compl. at ¶ 20. According to Plaintiff, on January 25, Nurse Practitioner ("NP") Valerie Monroe reviewed his x-ray report,[3] and told him that she would be prescribing him Baclofen, 10mg. Dkt. No. 119-1, Dep. of Robert Adams, III, dated July 6, 2016 ("Pl.'s Dep.") at pp. 19-20.[4] Plaintiff asserts that the prescription was later approved by Dana Gage, a facility doctor. *Id.* at pp. 14 & 18. Plaintiff claims that he then received the prescription twice a day—at 8:00 am and 8:00 pm—for the remainder of the time he was at Sing Sing, from January 25 through January

---

[2] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 7.1(a)(3). Although Plaintiff has filed a response to Defendants' Statement of Material Facts, it is not consistent with Local Rule 7.1(a)(3). *See* Dkt. No. 124-1. The Court will cite to the facts as set forth in Defendants' Statement of Material Facts when properly supported by the record. *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

[3] The Court notes that Defendants have filed the Declaration of Valerie Monroe attached to their Reply brief. Dkt. No. 127-1. Plaintiff has filed two letter motions requesting that the Court strike the Monroe Declaration, arguing that it contains "perjury" and is not appropriately introduced in Defendants' Reply brief. Dkt. Nos. 131 & 133. "Arguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). "It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010). Accordingly, the Court will not consider the Monroe Declaration in determining the present Motion.

[4] Plaintiff has filed a copy of his Deposition Transcript, and a Letter Motion requesting that the Court consider such Transcript as an exhibit in opposition to Defendants' Motion. Dkt. No. 121. Since Defendants have not objected to the authenticity of the Transcript filed by Plaintiff, Plaintiff's request is granted and the Court will consider Plaintiff's Deposition as part of the record.

31. *Id.* at pp. 32-33.

Defendants dispute Plaintiff's allegations and deny that Plaintiff was ever prescribed Baclofen. *See* Smith Decl. at ¶ 50. Defendants explain that if Plaintiff had actually been prescribed and provided with Baclofen it would have been recorded in his medical records, namely: (1) the AHR; (2) the "Outgoing Draft" from Sing Sing; and (3) "Treatment and Medication" records kept at Sing Sing. *Id.* at ¶¶ 35 & 50. Notably, there is no record of Plaintiff's Baclofen prescription in any of those records. *Id.* There is, however, a "Medication Administrator" form that notes a prescription for Baclofen. Pl.'s AHR at p. 103. Defendants assert several reasons why this form does not establish that Plaintiff was prescribed or provided with Baclofen at Sing Sing. Smith Decl. at ¶ 50. First, the form is not itself a prescription, but is merely a record of when medications or treatment have been provided to an inmate. *Id.* Second, although the date January 31 and two times are noted on the form—8:00 am and 8:00 pm—there are no signed initials indicating that Plaintiff was delivered the medication at those times. *Id.* Finally, the format of the form is different from the other medical administration forms used at Sing Sing, and thus, it was not created at that facility. *Id.* Plaintiff, for his part, alleges that the records indicating his prescription for Baclofen were improperly destroyed. 2d Am. Compl. at ¶¶ 94 & 96-97.

On his arrival at Upstate on February 1, 2013, Plaintiff was seen for an initial medical screening, during which Nurse Marlow[5] reviewed Plaintiff's medical records and conducted a physical assessment. Defs.' SMF at ¶¶ 45-48. Among the records reviewed by Nurse Marlow was the "Outgoing Draft" from Sing Sing, dated January 29, 2013, which did not indicate that Plaintiff then had any prescriptions or that any medications had been sent along with Plaintiff when he left

---

[5] Nurse Marlow is not a defendant to this action.

Sing Sing. *Id.* at ¶ 43. According to Defendants, if Plaintiff had been prescribed medication at the time of his transfer from Sing Sing, it would have been noted on his Outgoing Draft. Smith Decl. at ¶ 35. Nurse Marlow completed the "Incoming Draft," noting that Plaintiff had chronic lower-back pain, and was not on any current medications. Pl.'s AHR at p. 45. Nurse Marlow also completed an "'S' Block SHU Entrance Exam Form," where he indicated that Plaintiff denied being on any prescription medications. *Id.* at pp. 41-42.

The evening of February 1, Plaintiff claims that he stopped Nurse Marlow, who was making medication rounds, and asked for his medication because he was in "extreme physical pain." 2d Am. Compl. at ¶ 24. Plaintiff alleges that Nurse Marlow told him that he did not have any medications for him, and advised him to sign up for sick call, which Plaintiff did that night. *See id.* at ¶¶ 24-25 & 31. The following morning, however, Plaintiff claims that he was unable to get out of bed due to numbness of his legs, and the medical staff refused to provide him with any medication and recorded that he refused sick call. *Id.* at ¶¶ 32-36.

On February 6, 2013, in accordance with standard procedure following an inmate transfer, Defendant Dr. Mandalaywala conducted an initial review of Plaintiff's medical records. Defs.' SMF at ¶ 50. Dr. Mandalaywala was not Plaintiff's primary provider and his only involvement with Plaintiff's medical care was this initial review. Dkt. No. 115-9, Decl. of Vijay Kumar Mandalaywala, dated May 31, 2017, at ¶ 8. Based upon his review of Plaintiff's medical records, Dr. Mandalaywala determined that Plaintiff's back symptoms were properly treated by "continued activity as tolerated," use of non-prescription pain relievers as needed to mitigate any pain symptoms, and evaluation for physical therapy. *Id.* at ¶ 22. Dr. Mandalaywala's review of Plaintiff's medical records did not reflect any current prescriptions for medication; nor, in his

judgment, did he see any indication to treat Plaintiff's back symptoms with prescription medication. *Id.* at ¶¶ 22 & 24. He accordingly marked Plaintiff's Incoming Draft, "no new orders." *Id.* at ¶ 22; Pl.'s AHR at p. 45.

On February 11, 2013, Plaintiff wrote a letter, addressed to the Nurse Administrator, complaining that he was not receiving Baclofen, which he claimed had been prescribed to him at Sing Sing. Smith Decl., Ex. A. Plaintiff stated that he was in "extreme physical pain" and was suffering "relentless back + side muscle spasms." *Id.* On February 13, 2013, Defendant Smith answered Plaintiff's complaint, after reviewing his medical records. Smith Decl. at ¶ 41. In her answer, Smith advised Plaintiff to sign up for sick call to address his concerns. Smith Decl., Ex. A. As Smith explains in her Declaration, the authority to issue a prescription rests with an inmate's primary care provider; and in order to receive an appointment with their primary care provider, the inmate must request such appointment through sick call. Smith Decl. at ¶ 41. She states that she does not herself make appointments for inmates to see their primary care providers because the assessment about the need for such an appointment is better made by the nurses conducting sick call. *Id.* In her response to Plaintiff's complaint, Smith further noted that he was already scheduled for physical therapy and had access to pain medication daily through sick call. Smith Decl., Ex. A.

On February 13, 2013, Plaintiff was seen for an initial physical therapy consultation. Pl.'s AHR at pp. 60-61. The therapist noted that Plaintiff's range of motion was within normal limits and that he would benefit from physical therapy; he recommended that Plaintiff attend therapy once a week for four weeks. *Id.* at p. 61. Plaintiff attended physical therapy sessions on March 20, March 27, April 3, and April 10, 2013. Defs.' SMF at ¶¶ 48 & 52; Pl.'s AHR at pp. 63-68. Plaintiff was noted to tolerate the physical therapy well without complaints of pain. Pl.'s AHR at pp. 63-67.

On February 24, 2013, Plaintiff alleges that he had a conversation with Defendant Smith as she was conducting rounds. 2d Am. Compl. at ¶ 79. According to Plaintiff, he reiterated his complaints about not receiving his prescription medication and informed Smith that he was suffering from spasms and paresthesia, and that on two occasions he had fallen while walking. *Id.* at ¶ 82. Plaintiff claims that Smith stated, *inter alia*, that he did not "look like [he was] in any pain," that "this is the box, not a massage parlor," and that Plaintiff "should've thought about [his] 'pain before [he] did, what [he] did, to come to the box." *Id.* at ¶¶ 83, 85, & 88. Smith states that she has no memory of any personal conversations with Plaintiff. Smith Decl. at ¶ 58.

During his incarceration at Upstate, Plaintiff's medical records reflect that he was seen at sick call on February 5, February 12, and March 5. Defs.' SMF at ¶¶ 49, 80, & 93; Pl.'s AHR at pp. 46-47. Additionally, Plaintiff signed up for sick call, but was not seen because he was either asleep or not at his cell door when the nurse came by, on the dates of February 27, March 12, and March 28. Defs.' SMF at ¶¶ 86, 95, & 100; Pl.'s AHR at pp. 46-47. Plaintiff alleges that he signed up for and was seen by sick call on the following dates February 4, February 6, February 11, February 15, February 17, February 26, March 3, March 4, March 5, March 10, March 17, March 20, March 25, March 26. 2d Am. Compl. at ¶ 47. With respect to the absence of medical records for those dates, Plaintiff claims that his records were "falsified" and that certain records were destroyed. Pl.'s Dep. at p. 121. Plaintiff states that every sick call followed the same pattern: he would express his complaints of back pain and request his prescription for Baclofen and the nurse would give him one packet of "non-aspirin" pain medication. Pl.'s Dep. at pp. 134, 139-40 & 144. Plaintiff's medical records document that he was issued four packets of Tylenol on February 12 and March 5. Pl.'s AHR at pp. 46-47. Plaintiff claims that the "non-aspirin" was ineffective at treating his pain

symptoms. 2d Am. Compl. at ¶¶ 49-51.

## II. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v.*

*Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants were not personally involved in any constitutional violation; (3) Defendants are entitled to judgment as a matter of law on Plaintiff's medical indifference claims; and (4) Defendants are entitled to qualified immunity. Dkt. No. 115-18, Defs.' Mem. of Law. Since the Court finds that summary judgment is appropriate on the merits of

Plaintiff's Eighth Amendment claims, the Court does not reach Defendants' exhaustion, personal involvement, or qualified immunity arguments.

### A. Plaintiff's Eighth Amendment Deliberate Medical Indifference Claims

*1. Legal Standard*

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d

Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'"

*Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 2. Analysis

Defendants argue that Plaintiff is unable to satisfy either the objective or subjective prongs of his Eighth Amendment medical indifference claims as a matter of law. *See* Defs.' Mem. of Law at pp. 13-21.

As to the objective prong, the Court finds that Defendants' decision[6] to treat Plaintiff's back pain conservatively—that is, with physical therapy and non-prescription pain medication as needed—was adequate under the circumstances. Plaintiff claims that he was in "agonizing pain," that on occasion, he was unable to walk due to numbness in his legs, and that he was at a "substantially increased risk for further permanent injury to his spine." *See* 2d Am. Compl. at ¶¶ 71, 73, & 130. Yet Plaintiff's medical records document mostly benign findings. The x-ray taken on January 10, 2013, showed some straightening of the spine, but normal height of vertebra and spacing of discs. Pl.'s AHR at p. 70. Based on the x-rays, Plaintiff was assessed with a muscle

---

[6] The Court acknowledges that Defendants have raised the issue of their personal involvement in the alleged deprivation of Plaintiff's Baclofen prescription. Defs.' Mem. of Law at pp. 22-23. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). As to Defendant Dr. Mandalaywala, he was not Plaintiff's primary care provider and his role was limited to an initial review of Plaintiff's medical records. There is no evidence that he aware of Plaintiff's alleged prescription for Baclofen or his requests for that prescription. *See Johnson v. Wright*, 234 F. Supp. 2d 352, 365 (S.D.N.Y. 2002) (finding primary health provider was not personally involved in alleged Eighth Amendment violation where there was no evidence that any complaints regarding alleged denial of medical treatment were ever presented to him). With respect to Defendant Smith, she also was not directly involved in Plaintiff's medical care; she did, however, personally investigate and respond to Plaintiff's complaint and grievance regarding his alleged Baclofen prescription, which may give rise to personal involvement. *See, e.g.*, *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("If . . . the official does personally look into matters raised in the letter, or otherwise acts on the prisoner's complaint or request, the official may be found to be personally involved."). Regardless of Defendants' personal involvement, however, the Court finds that Plaintiff has failed to establish genuine issues of material fact as to his Eighth Amendment claims.

spasm. *Id.* Physical assessments of Plaintiff also showed normal findings in his mobility: Plaintiff had a good range of motion and was able to ambulate "swiftly and steadily." *Id.* at pp. 34-35 & 61. In light of these assessments, the Court cannot find that the decision to treat Plaintiff's back injury conservatively exposed him to a risk of serious harm. Overall, the record reflects that Defendants' decision to provide conservative treatment was reasonable.

Even if Plaintiff were able to show that Defendants deprived him of adequate care, he would not be able to show, at the subjective prong, that Defendants acted with a sufficiently culpable state of mind. Plaintiff's claim amounts to a disagreement with the course of treatment he received; he believes he should have received a prescription for stronger medication than what Defendants determined was appropriate.

A disagreement about the proper course of treatment is insufficient to establish a deliberate indifference claim. *See Chance v. Armstrong*, 143 F.3d at 703. ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). "Differences in opinion between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's serious medical needs." *Wright v. Genovese*, 694 F. Supp. 2d at 160; *see also Vail v. Lashway*, 2014 WL 4626490, at *14 (N.D.N.Y. Sept. 15, 2014) ("[T]he decision to choose one form of pain medication over another, even if the medication causes side effects, is not indicative of deliberate indifference."); *Scott v. Perio*, 2005 WL 711884, at *6 (W.D.N.Y. Mar. 25, 2005) ("It is not for the Court to second guess plaintiff's medical providers as to what medicine or what dosage should have been prescribed to treat the plaintiff."). Furthermore,

differences in opinion between physicians also do not give rise to a deliberate indifference claim. *See Douglas v. Stanwick*, 93 F. Supp. 2d 230, 325 (W.D.N.Y. 2000) ("Not every physician will treat every aliment in exactly the same manner. That does not mean that one of the physicians must be acting with deliberate indifference." (collecting cases)). Thus, even if the Court assumed that Plaintiff had been prescribed Baclofen at Sing Sing, his medical providers at Upstate may have reasonably decided to treat his back injury differently without acting with deliberate indifference.

Accordingly, for the above reasons, the Court recommends that Defendants' Motion be **granted**.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 115) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  December 5, 2017
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge